2005 OK CR 12

# In re ADOPTION OF the 2005 REVISIONS TO the OKLAHOMA UNIFORM JURY INSTRUCTIONS—CRIMINAL (SECOND EDITION).

## No. CCAD–2005–7.

Court of Criminal Appeals of Oklahoma.

July 28, 2005.

## ORDER ADOPTING AMENDMENTS TO OKLAHOMA UNIFORM JURY INSTRUCTIONS–CRIMINAL (SECOND EDITION)

¶1 On January 3, 2005, The Oklahoma Court of Criminal Appeals Committee for Preparation of Uniform Jury Instructions submitted its report and recommendations to the Court for the adoption of amendments to Oklahoma Uniform Jury Instructions–Criminal (Second Edition). The Court has reviewed the report by the committee and recommendations for the adoption of the 2005 proposed revisions to the Uniform Jury Instructions. Pursuant to 12 O.S.2001, § 577.2, the Court accepts that report and finds the revisions should be ordered adopted.

¶2 IT IS THEREFORE ORDERED ADJUDGED AND DECREED that the report of The Oklahoma Court of Criminal Appeals Committee for Preparation of Uniform Jury Instructions shall be accepted, the revisions shall be available for access via the internet from this Court's web site at *www.okcca.net* on the date of this order and provided to West Publishing Company for publication. The Administrative Office of the Courts is requested to duplicate and provide copies of the revisions to the judges of the District Courts and the District Courts of the State of Oklahoma are directed to implement the utilization of these revisions effective on the date of this order.

¶3 IT IS FURTHER ORDERED ADJUDGED AND DECREED the amendments to existing OUJI–CR 2d instructions, deletion of outdated instructions and the adoption of new instructions, as set out in the following designated instructions and attached to this order, are adopted, to wit:

1–5; 4–64; 4–68; 4–73; 5–19; 5–20; 5–21; 5–22; 5–23; 5–24; 5–25; 5–26; 5–27; 5–28; 5–29; 5–30; 5–114A; 6–3A; 6–3B; 6–3C; 6–5; 6–18; 6–24; 6–29; 6–30; 6–60; 6–61; 6–62; 8–25; 8–36; 8–38; 8–39; 10–17; 10–19; 10–21.

¶4 The Court also accepts and authorizes the updated committee comments to be published, together with the above styled revisions and each amended page in the revisions to be noted at the bottom as follows "(2005 Supp.)".

¶5 IT IS THE FURTHER ORDER OF THIS COURT that the members of The Oklahoma Court of Criminal Appeals Committee for Preparation of Uniform Criminal Jury Instructions be commended for their ongoing efforts to provide up-to-date Uniform Jury Instructions to the bench and the bar of the State of Oklahoma.

¶6 IT IS SO ORDERED.

¶7 WITNESS OUR HANDS AND THE SEAL OF THIS COURT this 28th day of July, 2005.

/s/ Charles S. Chapel
CHARLES S. CHAPEL, Presiding Judge

/s/ Gary L. Lumpkin
GARY L. LUMPKIN, Vice Presiding Judge

/s/ Charles A. Johnson
CHARLES A. JOHNSON, Judge

/s/ Arlene Johnson
ARLENE JOHNSON, Judge

Revisions to the Oklahoma Uniform
Jury Instructions—Criminal
(Second Edition)

2005 SUPP.

Approved 10/15/04

## OUJI–CR 1–5
### EXAMINATION BY THE COURT

I will now ask you a number of questions to determine your qualifications to serve as jurors in this case. To determine your qualifications I will need to obtain information from each of you, including some personal information. The purpose of these questions is to obtain a fair jury and it is not to embarrass you. If any of my questions should touch on sensitive subjects that you do not want to have heard by everyone present, you should tell me, and you can then

come forward so that we can discuss those matters privately.

1. Do you reside in [**Name of County**] County?

## Committee Comments

Okla. Const. art. 2, § 20 requires "trial by an impartial jury of the county in which the crime shall have been committed." Not every juror who reports for service on the jury panel is necessarily a resident of the county, and so the judge should make sure that all non-residents are removed from the jury.

2. The **attorney(s)** for the State **is/are** [**Name the Attorney(s)**]. Do any of you know the **attorney(s)** for the State? Has the District Attorney's office handled any matter for any of you?

3. The **attorney(s)** for the **defendant(s)** is/are [**Name the Attorney(s)**]. Do any of you know the **attorney(s)** for the **defendant(s)**? Has/Have the **attorney(s)** for the **defendant(s)** [**or his/her law firm**] represented you on any legal matter?

4. The **defendant(s)** in this case **is/are** is [**Name the Defendant(s)**]. Do any of you know the **defendant(s)**?

5. **Do/Did** any of you know [**Name the Alleged Victim(s)**], or any member of his/her/their family?

6. The witnesses who may be called in this case are [**Name the Witness(es)**]: Do any of you know any of the witnesses, or any member of their families?

7. Have any of you read or heard the alleged facts of this case? Have you expressed or formed an opinion concerning this case? Would any information you have read or heard concerning this case influence your ability to hear or decide this case impartially? Have you discussed this case with anyone prior to today?

8. Have any of you had any experience that you feel might affect your consideration of this case?

9. Are you or is anyone in your immediate family any of your friends or relatives employed or involved with a law enforcement agency or organization? Have you or has anyone in your immediate family any of your friends or relatives been connected with law enforcement in the past? Do you hold or have you held a "Reserve Deputy Commission," a "Special Deputy Commission," or an "Honorary Deputy Commission"?

## Committee Comments

Under 38 O.S. Supp. 2001, § 28, sheriffs or deputy sheriffs are disqualified from serving as jurors. The Court of Criminal Appeals has held that a person who holds a "reserve deputy commission," a "special deputy commission," or an "honorary deputy commission" is similarly disqualified from serving as a juror, even though the person holding this commission has no legal authority or legal duty to act as a deputy sheriff. *State v. Smith*, 1958 OK CR 6, 320 P.2d 719 (Okl.Cr.1958); *Henderson v. State*, 95 Okl. Cr. 342, 246 P.2d 393 (1952); *Allen v. State*, 70 Okl. Cr. 143, 105 P.2d 450 (1940); *Carr v. State*, 63 Okl. Cr. 201, 84 P.2d 42 (1938); *Tripp v. State*, 63 Okl. Cr. 41, 72 P.2d 529 (1937).

10. Have any of you ever been charged with or accused of a crime? Have any of your close friends or relatives ever been charged with or accused of a crime?

11. Have any of you ever been victims of a crime? Have any of your close friends or relatives ever been victims of a crime?

12. I will instruct you on the law and the rules by which the jury reaches a verdict. Your duty as jurors is to accept and follow the law as included in the instructions and rules given to you by me. If selected as a juror, will each of you accept and follow the law as included in the instructions and rules that I will give to you?

One instruction I will give is that **the/each** defendant is presumed innocent of the crime charged, and the presumption continues unless after consideration of all the evidence you are convinced of **his/her/(each defendant's)** guilt beyond a reasonable doubt. The State has the burden of presenting the evidence that establishes the guilt of **the/each** defendant beyond a reasonable doubt.

The/Each defendant must be found not guilty unless the State produces evidence which convinces you beyond a reasonable doubt of each element of the crime. If selected as a juror, will each of you presume the/each defendant innocent unless proven guilty beyond a reasonable doubt?

[Select either Alternate 1 (No Death Penalty) or Alternate 2 (Death Penalty)].

### Alternate 1 (No Death Penalty)

Another instruction I will give is that as jurors, if you find the defendant(s) guilty, you will have the duty to assess punishment. The punishment for the crime of [Name the Crime Charged] is a possible maximum punishment of (a term in the State Penitentiary for [possible maximum years in Penitentiary])/(a term in the County Jail for [possible maximum jail term]) and/or [a fine of (possible maximum fine)].

If selected as a juror and you find the defendant(s) guilty, will each of you assess punishment in accordance with the law?

### Notes on Use

Alternate 1 shall be given except when the crime charged is murder in the first degree and the death penalty is sought. It should be repeated for each crime charged.

### Committee Comments

If the charge involves an "after former conviction" charge, Question 11, Alternate 1, should not be given at voir dire. *See* 22 O.S.2001, § 860.1. No discussion of the possible punishment in an "after former conviction" case should be given to the jury until the second stage of the trial.

### Alternate 2 (Death Penalty)

The defendant is charged with murder in the first degree. It will be the duty of the jury to determine whether the defendant is guilty or not guilty after considering the evidence and instructions of law presented in court.

If the jury finds beyond a reasonable doubt that the defendant is guilty of murder in the first degree, the jury will then have the duty to assess punishment. The punishment for murder in the first degree is death, imprisonment for life without parole or imprisonment for life.

If you find the defendant guilty of murder in the first degree, can you consider all three of these legal punishments—death, imprisonment for life without parole or imprisonment for life—and impose the one warranted by the law and evidence?

### [If the answer to the preceding question is negative ]

If you found beyond a reasonable doubt that the defendant was guilty of murder in the first degree and if under the evidence, facts and circumstances of the case the law would permit you to consider a sentence of death/(imprisonment for life without parole)/(imprisonment for life), are your reservations about the penalty of death/(imprisonment for life without parole)/(imprisonment for life) so strong that regardless of the law, the facts and circumstances of the case, you would not impose consider the imposition of the penalty of death/(imprisonment for life without parole)/(imprisonment for life)?

[Required To Be Asked In All Death Penalty Cases On Request of Defense Counsel By Either the Judge or Defense Counsel]—If you found find beyond a reasonable doubt that the defendant was is guilty of murder in the first degree, would will you automatically impose the penalty of death?

### Notes on Use

Alternate 2 shall be given when the crime charged is murder in the first degree and the death penalty is sought. The Oklahoma Court of Criminal Appeals emphasized in *Hanson v. State*, 2002 2003 OK CR 12, ¶ 6, 72 P.3d 40, 46–47, that "[t]his Court has repeatedly held that, if a defendant so requests, either he or the trial court must ask prospective jurors whether they would automatically impose a sentence of death." Accordingly, the jurors must be asked the last question above in all death penalty cases, if the defense

~~counsel so requests.~~ While the Committee acknowledges that *Morgan v. Illinois,* 504 U.S. 719 (1992) does not require the last question to be asked absent the request of defense counsel, the Committee believes that the interests of justice and judicial economy will be best served if the trial court asks this question in all death penalty cases.

### Committee Comments

The punishments authorized in 21 O.S. 2001 § 701.9 are death, imprisonment of life without parole, and imprisonment for life.

The United States Supreme Court held in *Witherspoon v. Illinois,* 391 U.S. 510, 521–22 (1968), that the death penalty could not be carried out if it was imposed by a jury from which jurors had been excluded because they voiced general objection to the death penalty or conscientious or religious scruple to it. A juror may be challenged for cause, however, if that jurors's views on capital punishment would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt,* 469 U.S. 412, 424 (1985), *quoting Adams v. Texas,* 448 U.S. 38, 45 (1980). *See also Trice v. State,* 1993 OK CR 19, ¶ 8, 853 P.2d 203, 209 ~~(Okl.Cr.1993)~~ (applying this standard). A juror should not be excused for cause because he or she disagrees with the death penalty or even if imposing it would do violence to the juror's conscience. *Banks v. State,* 1985 OK CR 60, ¶ 10, 701 P.2d 418, 422 ~~(Okl.Cr.1985)~~ ("Violence done to one's conscience is not the point of the *Witherspoon* voir dire examination."). Instead, the trial court's concern should be "whether each jury member will consider the imposition of the death sentence, as one of the alternatives provided by state law, should the case be appropriate for that punishment." *Duvall v. State,* 1991 OK CR 64, ¶ 24, 825 P.2d 621, 630 ~~(Okl.Cr.1991)~~.

In addition to being willing to consider imposition of a death sentence, if warranted, a juror must also be willing to consider the alternative sentences of imprisonment for life without parole and imprisonment for life. The United States Supreme Court held in *Morgan v. Illinois,* 504 U.S. 719, 735 (1992), that a trial court's refusal to inquire into whether a potential juror would automatically impose the death penalty upon conviction of a defendant was a violation of due process of law. *See also Ross v. Oklahoma,* 487 U.S. 81, 85 (1988) (juror who stated that he would vote to impose death automatically if the jury decided that the defendant was guilty should have been removed for cause). In *Hanson v. State,* ~~2002~~ 2003 OK CR 12, ¶¶ 6–8, 72 P.3d 40, 46–47, the Oklahoma Court of Criminal Appeals remanded for capital resentencing because the trial court did not allow defense counsel to ask whether any juror would automatically impose death.

Although Alternate 2 does not conform exactly to the language that the Court of Criminal Appeals recommended in *Duvall v. State, supra,* Alternate 2 is consistent with *Duvall* 's holding. It also incorporates the requirement in *Morgan v. Illinois, supra,* that the trial judge should question the jurors about whether they would give appropriate consideration to life imprisonment as well as the death penalty. *Cf. Hammon v. State,* 1995 OK CR 33, ¶ 54, 898 P.2d 1287, 1300 ~~(Okl.Cr.1995)~~ ("A defendant on trial for his life must be permitted on voir dire to ascertain whether his prospective jurors function under the belief that upon conviction the death penalty should automatically be imposed.").

13. Having been asked these questions, do any of you know at this time any reason why you could not be a fair and impartial juror? If so please raise your hand.

14. The court now requests that each of you give your name, your spouse's name if you are married, your occupation, your spouse's occupation, and the number of children you have. Please speak slowly and clearly. Let us begin with [Note: Indicate the juror who is to begin.]

### Committee Comments

The Commission urges that the trial court prepare and distribute to the attor-

neys a sheet with a facsimile of the jury box providing spaces for the attorneys to copy the information requested by the court in question 13.

Jurors should not be asked to give their addresses during voir dire. 38 O.S.~~Supp.~~ 2001 § 36 ("Persons serving as jurors during a trial shall not be asked or required to give their complete residence addresses or telephone number in the presence of the defendant.").

OUJI–CR 4–64
MURDER IN THE FIRST DEGREE
BY FELONY MURDER—ELEMENTS

No person may be convicted of murder in the first degree unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

First, the death of a human;

Second, the death occurred as a result of an act or event which happened in the <u>defendant's</u> commission/(attempted commission) of a/an

[forcible rape]

[robbery with a dangerous weapon]

[kidnapping]

[escape from lawful custody] 1

[first-degree burglary/arson]

[murder of a person other than the deceased]

[shooting/discharge of a firearm/crossbow with intent to kill a person other than the deceased]

[intentional discharge of a firearm/[specify other deadly weapon] into a dwelling/(building used for business/public purposes) ]

[unlawful distributing or dispensing of controlled dangerous substances]

[trafficking in illegal drugs];

~~Third, caused by (the defendant)/(any person engaged with the defendant) while~~

~~in the commission/(attempted commission) of a/an~~

~~[forcible rape]~~

~~[robbery with a dangerous weapon]~~

~~[kidnapping]~~

~~[escape from lawful custody]~~

~~[first-degree burglary/arson]~~

~~[murder of a person other than the deceased]~~

~~[shooting/discharge of a firearm/crossbow with intent to kill a person other than the deceased]~~

~~[intentional discharge of a firearm/[specify other deadly weapon] into a dwelling/(building used for business/public purposes) ]~~

~~[unlawful distributing or dispensing of controlled dangerous substances]~~

~~[trafficking in illegal drugs];~~

~~Fourth~~ <u>Third</u>, the elements of the

[forcible rape]

[robbery with a dangerous weapon]

[kidnapping]

[escape from lawful custody]

[first-degree burglary/arson]

[murder of a person other than the deceased]

[shooting/discharge of a firearm/crossbow with intent to kill a person other than the deceased]

[intentional discharge of a firearm/[specify other deadly weapon] into a dwelling/(building used for business/public purposes) ]

[unlawful distributing or dispensing of controlled dangerous substances]

[trafficking in illegal drugs]

the defendant is alleged to have been in the commission of are as follows:

1. It must be emphasized that the Oklahoma statutes do not include as a specific crime "An Escape from Lawful Custody." This instruction is appropriate only when the defendant has escaped from a peace officer after being lawfully arrested or detained by such officer, 21 O.S. ~~1991~~ 2001, § 444, or where the escape is from a penal institution, 21 O.S. ~~Supp. 1999~~ 2001, § 443. (See OUJI–CR 6–52 through 6–54.)

**[Give Elements of Underlying Felony]**

### Notes on Use

The trial judge should give accomplice and/or coconspirator instructions where appropriate.

### Committee Comments

As a result of its amendment in 1996, the felony-murder statute, 21 O.S.2001, § 701.7(B) now covers deaths committed by intended victims, police officers and innocent bystanders. *Kinchion v. State,* 2003 OK CR 28, ¶ 6, 81 P.3d 681, 683.

## OUJI–CR 4–68
## DEATH PENALTY PROCEEDINGS—INTRODUCTION

The defendant in this case has been found guilty by you, the jury, of the offense of murder in the first degree. It is now your duty to determine the penalty to be imposed for this offense.

Under the law of the State of Oklahoma, every person found guilty of murder in the first degree shall be punished by death, or imprisonment for life without the possibility of parole, or imprisonment for life with the possibility of parole.

### Committee Comments

In *Johnson v. State,* 1996 OK CR 36, ¶ 52, 928 P.2d 309, 320, the Court of Criminal Appeals approved a modification of this Instruction concerning the possibility of parole in order to provide greater clarity. The court stated, however, that it did not require the giving of the Instruction with this modification.

Jurors may ask the judge whether a person who has been sentenced to imprisonment for life without the possibility of parole may ever be released from prison. The Court of Criminal Appeals gave the following advice to trial courts in *Littlejohn v. State,* 2004 OK CR 6, ¶ 11, 85 P.3d 287, 293–94, on how to respond to such requests:

Therefore, in future cases where the jury during deliberations asks, in some form or fashion, whether an offender who is sentenced to life imprisonment without the possibility of parole is parole eligible, the trial court should either refer the jury back to the instructions, *Douglas,* 1997 OK CR 79, ¶¶ 103–04, 951 P.2d at 678, tell the jury that the punishment options are self explanatory, *see Mayes,* 1994 OK CR 44, ¶ 137, 887 P.2d at 1318, or advise the jury that the punishment options are to be understood in their plain and literal sense and that the defendant will not be eligible for parole if sentenced to life imprisonment without the possibility of parole. While arguably the latter response is nothing more than another way of referring the jury back to the instructions, it does force the jury to accept the plain meaning of the sentencing options and impose the sentence it deems appropriate under the law and facts of the case. We recognize trial courts are in the best position to decide which answer is best suited to the situation as the questions posed by juries come in a myriad of forms on this issue. However, we believe the latter explanation may alleviate some obvious concerns of jurors more effectively than simply telling the jury it has all the law and evidence necessary to reach a decision.

## OUJI–CR 4–73
## DEATH PENALTY PROCEEDINGS—HEINOUS, ATROCIOUS, CRUEL DEFINED

As used in these instructions, the term "heinous" means extremely wicked or shockingly evil; "atrocious" means outrageously wicked and vile; "cruel" means pitiless, or designed to inflict a high degree of pain, utter indifference to, or enjoyment of, the sufferings of others.

The phrase "especially heinous, atrocious, or cruel" is directed to those crimes where the death of the victim was preceded by torture of the victim or serious physical abuse.

The State has alleged that the murder was "especially heinous, atrocious, or cruel." This aggravating circumstance is not estab-

lished unless the State proves beyond a reasonable doubt:

First, that the murder was preceded by either torture of the victim or serious physical abuse of the victim; and

Second, that the facts and circumstances of this case establish that the murder was heinous, atrocious, or cruel.

You are instructed that the term "torture" means the infliction of either great physical anguish or extreme mental cruelty. You are further instructed that you cannot find that "serious physical abuse" or "great physical anguish" occurred unless you also find that the victim experienced conscious physical suffering prior to **his/her** death.

In addition, you are instructed that the term "heinous" means extremely wicked or shockingly evil; the term "atrocious" means outrageously wicked and vile; and the term "cruel" means pitiless, designed to inflict a high degree of pain, or utter indifference to or enjoyment of the suffering of others.

### Committee Comments

The Court of Criminal Appeals has cautioned trial courts not to omit the word "physical" from the last phrase of the above definition. *Johnson v. State,* 1996 OK CR 36, ¶¶ 38, 42, 928 P.2d 309, 318; *Richie v. State,* 1995 OK CR 67, ¶ 43, 908 P.2d 268, 278–79. In both cases, the Court of Criminal Appeals determined that the use of the term "serious abuse" instead of "serious physical abuse" was harmless error, however.

In *Hawkins v. State,* 1994 OK CR 83, 891 P.2d 586, the Court of Criminal Appeals defined torture as follows: "Torture .... includes the infliction of great physical anguish .... or extreme mental cruelty." Id. ¶ 44, 891 P.2d at 597. See also *Smith v. State,* 1996 OK CR 50, ¶ 42, 932 P.2d 521, 535 ("Torture ..... can also include evidence of extreme mental cruelty."); *Cheney v. State,* 1995 OK CR 72, ¶¶ 15–24, 909 P.2d 74, 80–83.

The Court of Criminal Appeals has directed trial courts to use this instruction in all future capital murder trials where the State alleges the heinous, atrocious, or cruel aggravator. *DeRosa v. State,* 2004 OK CR 19, ¶ 96, 89 P.3d 1156.

### OUJI–CR 5–19
### EMBEZZLEMENT—INTRODUCTION

The defendant is charged with **felony/misdemeanor** embezzlement of [**Description of Property, Amount, etc.**] on [**Date**] (owned by)/(entrusted to him/her/them by) [**Name of Owner, Employer, etc.**] in [**Name of County**] County, Oklahoma.

### Committee Comments

This introductory instruction is meant for use with the crimes set forth in Title 21, Chapter 59, entitled Embezzlement.

For the sake of simplicity, the Commission has used only the word "embezzlement" to describe the crime charged, rather than "embezzlement by carrier," "embezzlement by bailee," etc. The elements of the crime of embezzlement are defined in 21 O.S.1991, § 1451, but separate statutes then apply to different kinds of persons. The Commission has listed the elements of the crime under separate element instructions for each statute, and the trial judge should use the element instruction for the specific statute under which the defendant is charged.

The Commission has not listed grand embezzlement and petit embezzlement as separate crimes in this introductory instruction as a means of distinguishing the felony from the misdemeanor crime. Under 21 O.S. Supp.1995, § 1462, if the value of the property embezzled is more than $50, the crime is a felony; if the value of the property embezzled is $50 or less, the crime is a misdemeanor. The accused is rightfully concerned as to whether he will be convicted of a felony or of a misdemeanor, whereas he is relatively unconcerned whether he is prosecuted as a trustee under section 1452, or under section 1454. Punishment does not vary between conviction under section 1452 or section 1454, but does vary according to the value of the property embezzled. Since the terms "grand" and "petit" embezzlement are not statutory in origin, the Commission has

~~concluded that the trial judge should inform the jury of the felony or misdemeanor nature of the crime by reference to the value of the property allegedly embezzled, rather than by incorporating these terms.~~

Under 21 O.S. Supp.2002, § 1451(B), the crime of embezzlement is a misdemeanor if the value of the property embezzled is less than $500. and it is a felony if the value of the property embezzled is $500 or more.

Embezzlement is basically a crime against ownership, since the defendant has acquired physical possession by lawful means. If the defendant unlawfully acquired physical possession, he should have been charged with larceny, a crime against possession, not with embezzlement. The usual case involves entrustment of property by the owner to a person who embezzles the property. The language "owned by" is appropriate here. Situations arise, however, in which an agent embezzles money received from a principal but under circumstances that make it inappropriate to say that the principal is the owner of the property. See, e.g., *State v. Harrison*, 1989 OK CR 27, ¶ 5, 777 P.2d 1343, 1345 ~~(Okl. Cr. 1989)~~ (embezzlement statute covered employer who withheld taxes on behalf of the State but refused to pay them over to the State); *Wallen v. State*, 1961 OK CR 110, ¶ 1, 367 P.2d 516, 517 ~~(Okl.Cr. 1961)~~ (Justice of the Peace failed to pay finds he collected into the county treasury); *Wiley v. State*, 1960 OK CR 4, ¶¶ 8–10, 349 P.2d 30, 34 ~~(Okl.Cr.1960)~~ (assistant county attorney received fines from traffic violators); *Waldock v. State*, 42 Okl. Cr. 331, 333–34, 276 P. 509, 511 (1929) (trustee of county received proceeds of bond issue). In these latter situations, the language "entrusted to him by" is more appropriate.

OUJI–CR 5–20
EMBEZZLEMENT (APPROPRIATING, ~~SECTION 1452~~)—ELEMENTS

No person may be convicted of **felony/misdemeanor** embezzlement unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

First, fraudulently;

Second, appropriated;

Third, personal property;

Fourth, (of value)/(valued at more than $50/$500 **$500/$1,000/$25,000** );

Fifth, of ~~a/an association/society/corporation~~ **a person/(legal entity)**;

Sixth, ~~entrusted to the defendant~~ **to any use or purpose not intended or authorized by its owner;**

Seventh, ~~as a/an officer/director/trustee/clerk/servant/agent~~ **where the property was legally obtained; and**

**[Eighth, the property was entrusted to the defendant for a specific purpose/use/disposition, including any funds "held in trust" for any purpose].**

**OR**

**[Eighth, the defendant obtained the property by virtue of a power of attorney for the sale/transfer of the property].**

**OR**

**[Eighth, the property was controlled/possessed for the use of another person].**

**OR**

**[Eighth, the property was to be used for a public/benevolent purpose].**

**OR**

**[Eighth, the defendant diverted money appropriated by law from the purpose and object of the appropriation].**

**OR**

**[Eighth, the defendant failed/refused to pay over to the state/(Specify Other Appropriate Authority) any tax/(Specify Other Type of Monies) collected in accordance with state law; and**

**Ninth, the defendant appropriated the tax/(Specify Other Type of Monies) for (his/her own use)/(the use of another person) ].**

**OR**

[Eighth, the defendant possessed the property for the purpose of transportation without regard to whether packages containing the property have been broken].

**OR**

[Eighth, the defendant removed crops from leased/rented premises with the intent to deprive the owner/landlord of rent due from the premises].

**OR**

[Eighth, the defendant fraudulently appropriated rent from leased/rented premises to himself/herself/(any person) ].

**OR**

[Eighth, the property was possessed/controlled by virtue of a lease/rental agreement; and

Ninth, the defendant willfully/intentionally did not return the property within 10 days after the agreement expired].

---

Statutory Authority: 21 O.S. Supp.2004, § 1451.

### Committee Comments

Two element instructions are given for embezzlement under section 1451 because two fact situations constitute crimes under the statute. This instruction covers the usual case in which the State will present evidence that the accused has in fact appropriated the property. The next instruction (OUJI–CR 5–21, infra) covers the case in which no appropriation has occurred but the accused has hidden the property with fraudulent intent to appropriate it at a more convenient time. Common law cases are split on the question of whether the act of hiding the property constitutes a conversion. Section 1451 explicitly resolves the question. Hence, instructions are presented to cover both situations. The trial judge should use the instruction more appropriate for the facts of the pending case.

The third element indicates that the property which is subject to embezzlement is personal property, not real property. The statutory language does not specify personal property, but merely "property." Basic research into Oklahoma cases has not revealed a case addressing this question. Only a few cases in the United States have dealt with the specific question of whether real property is covered by the embezzlement crime. See *People v. Roland*, 134 Cal.App. 675, 26 P.2d 517 (1933) (real property is subject to embezzlement); *Manning v. State*, 175 Ga. 875, 166 S.E. 658 (1932); *State v. Clark*, 60 Ohio App. 367, 21 N.E.2d 484 (1938) (real property is not subject to embezzlement). Even the treatise writers appear divided on the question. R. Perkins, Criminal Law 291 (2d ed.1969) and W. Clark & W. Marshall, A Treatise on the Law of Crimes 904–07 (7th ed.1967) imply that real property cannot be embezzled, whereas W. LaFave & A. Scott, Criminal Law § 89, at 646–647 (1972), state that, on principle, conviction for embezzlement of real property should be possible.

The Committee has concluded that real property was not meant to be included within the embezzlement statutes of Oklahoma. The Committee reached this conclusion for several reasons. First, embezzlement historically has been used to fill the gaps opened by interpretation of common law larceny. Larceny applies to personal property only because real property cannot be taken and carried away. Second, the punishment for embezzlement in Oklahoma is correlated to the punishment for larceny. 21 O.S.2001, § 1462. Third, the common law definition is to be followed, in the opinion of the Commission, unless the Legislature has clearly indicated otherwise. If the Legislature had meant to expand embezzlement, it should have used the words "real or personal property."

The seventh element presents the concept of lawful acquisition by the person who has embezzled. If the property is

wrongfully acquired initially, the crime is larceny, not embezzlement. *Ennis v. State*, 1917 OK CR 150, 13 Okl. Cr. 675, 167 P. 229; *Bivens v. State*, 1912 OK CR 11, 6 Okl. Cr. 521, 120 P. 1033; *Flohr v. Territory*, 1904 OK 93, 14 Okl. 477, 78 P. 565.

In light of the statutory language of section 1451, a question arises whether the Legislature intended to abolish the distinction made at common law between custody and possession. At common law if a person merely acquired custody of property, i.e., physical possession, and then converted the property, the person had committed larceny but not embezzlement. The common law reasoning is that a person who has custody does not have legal possession of the property; hence, the conversion is a trespassory taking, rather than an appropriation. Taking is an element of larceny, whereas appropriating is an element of embezzlement. R. Perkins, Criminal Law 289 (2d ed.1969). The language of the statute is susceptible to a construction indicating that it is immaterial whether the embezzler had custody or possession when he converted.

Conflicting lines of cases decided under prior Oklahoma statutes exist in Oklahoma concerning the custody/possession dichotomy. In *Cunningham v. District Court of Tulsa*, 1967 OK CR 183, 432 P.2d 992, and *Gibson v. State*, 1958 OK CR 74, 328 P.2d 718, overruled on other grounds, *Parker v. State*, 1996 OK CR 19, n. 4, 917 P.2d 980, 986, the distinction between custody and possession is drawn. In *Smith v. State*, 42 Okl. Cr. 136, 275 P. 359 (1929), the distinction is repudiated. Although *Cunningham*, *Gibson*, and *Smith* construe separate statutes, the language of the statutes is similar. Former section 1452 read, "in his possession or under his control"; former section 1454 read, "entrusted with or having in his control"; former section 1456 read, "has come into his control or care"; and former section 1453 read, "having under his control." The Commission has concluded that the reasoning of the court in the *Cunningham* and *Gibson* cases

should be adopted when construing the embezzlement statutes in order to preserve the custody/possession distinction.

The fourth element is included to indicate whether the defendant is charged with felony or misdemeanor embezzlement and for the purposes of determining the appropriate range of punishment.

Some overlap with the larceny statutes may result from the following provision at the end of 21 O.S. Supp.2002, § 1451(A)(7): "without regard to whether packages containing the property have been broken." The common law courts hold that misappropriation of the entire package delivered to a carrier is not larceny because the carrier has lawful possession. Misappropriation of the entire package is therefore embezzlement. If the carrier opened the package and took an item in the package, however, the courts held that larceny has been committed because the carrier did not have lawful possession of the individual items in the package. This is known as the "breaking bulk" doctrine. However, under section 1451(A)(7) this latter factual situation is also embezzlement. The language of section 1451(A)(7) indicates that embezzlement is committed whether the carrier takes the whole package or individual items. R. Perkins, Criminal Law 260–62 (2d ed.1969).

OUJI–CR 5–21

EMBEZZLEMENT (SECRETING, ~~SECTION 1452~~)—ELEMENTS

No person may be convicted of **felony/misdemeanor** embezzlement unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

~~First, with fraudulent intent to appropriate;~~

~~Second~~ First, secreted;

~~Third~~ Second, personal property;

~~Fourth~~ Third, **(of value)/(valued at more than ~~$50/$500~~ $500/$1,000/$25,000)**;

~~Fifth~~ Fourth, of ~~a/an association/society/corporation~~ a **person/(legal entity)**;

Fifth, with fraudulent intent to appropriate;

Sixth, ~~entrusted to the defendant~~ to any use or purpose not intended or authorized by its owner;

Seventh, ~~as a/an officer/director/trustee/clerk/servant/ agent~~ where the property was legally obtained; and

[Eighth, the property was entrusted to the defendant for a specific purpose/use/disposition, including any funds "held in trust" for any purpose].

OR

[Eighth, the defendant obtained the property by virtue of a power of attorney for the sale/transfer of the property].

OR

[Eighth, the property was controlled/possessed for the use of another person].

OR

[Eighth, the property was to be used for a public/benevolent purpose].

OR

[Eighth, the defendant diverted money appropriated by law from the purpose and object of the appropriation].

OR

[Eighth, the defendant failed/refused to pay over to the state/(Specify Other Appropriate Authority) any tax/(Specify Other Type of Monies) collected in accordance with state law; and

Ninth, the defendant appropriated the tax/(Specify Other Type of Monies) for (his/her own use)/(the use of another person) ].

OR

[Eighth, the defendant possessed the property for the purpose of transportation without regard to whether packages containing the property have been broken].

OR

[Eighth, the defendant removed crops from leased/rented premises with the intent to deprive the owner/landlord of rent due from the premises].

OR

[Eighth, the defendant fraudulently appropriated rent from leased/rented premises to himself/herself/(any person) ].

OR

[Eighth, the property was possessed/controlled by virtue of a lease/rental agreement; and

Ninth, the defendant willfully/intentionally did not return the property within 10 days after the agreement expired].

---

Statutory Authority: 21 O.S. ~~1991 & Supp. 1995, §§ 1451, 1452, 1462.~~ Supp.2004, § 1451.

~~Committee Comments~~

~~Two element instructions are given for section 1452 because two fact situations constitute crimes under the statute. The first instruction covers the usual case in which the State will present evidence that the accused has in fact appropriated the property. The second instruction covers the case in which no appropriation has occurred but the accused has hidden the property with fraudulent intent to appropriate it at a more convenient time. Common-law cases are split on the question of whether the act of hiding the property constitutes a conversion. Section 1452 explicitly resolves the question. Hence, instructions are presented to cover both situations. The trial judge should use the instruction more appropriate for the facts of the pending case.~~

~~The third element indicates that the property which is subject to embezzlement~~

is personal property, not real property. The statutory language does not specify personal property, but merely "property." Basic research into Oklahoma cases has not revealed a case addressing this question. Only a few cases in the United States have dealt with the specific question of whether real property is covered by the embezzlement crime. *See People v. Roland,* 134 Cal.App. 675, 26 P.2d 517 (1933) (real property is subject to embezzlement); *Manning v. State,* 175 Ga. 875, 166 S.E. 658 (1932); *State v. Clark,* 60 Ohio App. 367, 21 N.E.2d 484 (1938) (real property is not subject to embezzlement). Even the treatise writers appear divided on the question. R. Perkins, *Criminal Law* 291 (2d ed.1969) and W. Clark & W. Marshall, *A Treatise on the Law of Crimes* 904-07 (7th ed.1967) imply that real property cannot be embezzled, whereas W. LaFave & A. Scott, *Criminal Law* § 89, at 646–647 (1972), state that, on principle, conviction for embezzlement of real property should be possible.

The Commission has concluded that real property was not meant to be included within the embezzlement statutes of Oklahoma. The Commission reached this conclusion for several reasons. First, embezzlement historically has been used to fill the gaps opened by interpretation of common law larceny. Larceny applies to personal property only because real property cannot be taken and carried away. Second, the punishment for embezzlement in Oklahoma is correlated to the punishment for larceny. 21 O.S. Supp.1995, § 1462. Third, the common law definition is to be followed, in the opinion of the Commission, unless the Legislature has clearly indicated otherwise. If the Legislature had meant to expand embezzlement, it should have used the words "real or personal property."

The sixth element presents the concept of lawful acquisition by the person who has embezzled. If the property is wrongfully acquired initially, the crime is larceny, not embezzlement. *Ennis v. State,* 13 Okl. Cr. 675, 167 P. 229 (1917); *Bivens v. State,* 6 Okl. Cr. 521, 120 P. 1033 (1912); *Flohr v. Territory,* 14 Okl. 477, 78 P. 565 (1904). Moreover, the sixth element presents the concept of a fiduciary relationship between the owner of the property and the person who embezzles it. *See State v. Rhine,* 773 P.2d 762, 763 (Okl.Cr.1989) (police officers were involuntary bailees of a hog that they acquired in the course of an extraordinary emergency and they were therefore subject to prosecution for embezzlement).

In light of the statutory language of several embezzlement statutes, sections 1452, 1453, 1454, and 1456, a question arises whether the Legislature intended to abolish the distinction made at common law between custody and possession. At common law if a person merely acquired custody of property, *i.e.,* physical possession, and then converted the property, the person had committed larceny but not embezzlement. The common law reasoning is that a person who has custody does not have legal possession of the property; hence, the conversion is a trespassory taking, rather than an appropriation. Taking is an element of larceny, whereas appropriating is an element of embezzlement. R. Perkins, *Criminal Law* 289 (2d ed.1969). The language of the statutes is susceptible to a construction indicating that it is immaterial whether the embezzler had custody or possession when he converted.

Conflicting lines of cases exist in Oklahoma concerning the custody/possession dichotomy. In *Canningham v. District Court of Tulsa,* 432 P.2d 992 (Okl.Cr.1967) and *Gibson v. State,* 328 P.2d 718 (Okl.Cr. 1958), *overruled on other grounds, Parker v. State,* 917 P.2d 980, 986 n.4 (Okl.Cr. 1996), the distinction between custody and possession is drawn. In *Smith v. State,* 42 Okl. Cr. 136, 275 P. 359 (1929), the distinction is repudiated. Although *Canningham, Gibson,* and *Smith* construe separate statutes, the language of the statutes is similar. Section 1452 reads, "in his possession or under his control", section 1454 reads, "entrusted with or having in his control"; section 1456 reads, "has come into his control or care"; and section 1453 reads, "having under his control." The Commission has concluded that the reason-

ing of the court in the *Cunningham* and *Gibson* cases should be adopted when construing the embezzlement statutes in order to preserve the custody/possession distinction.

The fifth and seventh elements are the elements which make the crime specifically prosecutable under section 1452, as opposed to other embezzlement statutes. The property embezzled must be property of an association or corporation with which the defendant is associated as trustee, director, officer, clerk, servant, or agent.

The fourth element is included to indicate whether the defendant is charged with felony or misdemeanor embezzlement.

As indicated by the second element of the appropriating instruction (OUJI–CR 5–20), the defendant must appropriate the property before embezzlement has been committed. Failure simply to return property, or failure simply to pay a debt, does not constitute a conversion of property. *Shannon v. State,* 12 Okl. Cr. 584, 160 P. 1131 (1916). If a demand is made for the return of property, however, and the person in possession refuses to return the property, conversion has been established. Thus, although conversion can be established without a demand for return being made, whether or not a demand has been made is relevant, and can be decisive, to the question of whether or not the element of appropriation has been proved. *Waide v. State,* 13 Okl. Cr. 165, 162 P. 1139 (1917); *Blake v. State,* 12 Okl. Cr. 549, 160 P. 30 (1916).

OUJI–CR 5–22
EMBEZZLEMENT (APPROPRIATING, SECTION 1453)—ELEMENTS
THIS INSTRUCTION HAS
BEEN DELETED

No person may be convicted of felony/misdemeanor embezzlement unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

First, fraudulently;

Second, appropriated;

Third, personal property;

Fourth, (of value)/(valued at more than $50/$500);

Fifth, of another;

Sixth, entrusted to the defendant;

Seventh, as a carrier.

---

Statutory Authority: 21 O.S.1991 & Supp. 1995, §§ 1453, 1462.

Committee Comments

Only one instruction is prepared for section 1453, in contrast with the two instructions for section 1452. The statutory language of section 1453 does not include the language "secretes it with a fraudulent intent." Hence, the question is raised as to whether the act of hiding property with intent to appropriate at a more propitious moment constitutes a conversion under section 1453. As indicated in the commentary to section 1452, the common law cases are split as to whether secreting the property is conversion. Since the Legislature did include the language "secretes it with fraudulent intent" in sections 1452, 1454, 1455, and 1456, the Commission has concluded that the absence of this language in section 1453 means that secreting with fraudulent intent is not encompassed within the definition of "appropriates," the second element of the instruction. To promote consistency in language and uniformity in the instructions, the word "appropriates" in the instructions under sections 1452 through 1456 does not include in its definition the act of secreting with fraudulent intent to appropriate. When the statutory language of the specific section includes the phrase "secretes it with fraudulent intent," a second instruction is presented.

The appropriating instruction for section 1452 and the instruction for section 1453 differ only in the language of the fifth and seventh elements. Whereas section 1452 protects the property of an association, a society, or a corporation, section 1453 protects anyone's property. The fifth element therefore reads "of another" to indicate that the property embezzled is property owned by someone other than the carrier,

but does not further specify ownership. The seventh element then notes that the property is property entrusted to the defendant as a carrier. Section 1453 specifically covers embezzlement when the relationship between the embezzler and the owner is that of a carrier of the owner's property, and the seventh element makes the crime specifically prosecutable under section 1453 as opposed to other embezzlement statutes.

The last clause of the statute, which begins "whether he has broken the packages . . .", indicates that this section might overlap with larceny statutes. The common-law courts hold that misappropriation of the entire package delivered to a carrier is not larceny because the carrier has lawful possession. Misappropriation of the entire package is therefore embezzlement. If the carrier opens the package and takes an item in the package, however, the courts hold that larceny has been committed because the carrier does not have lawful possession of the individual items in the package. This is known as the "breaking bulk" doctrine. However, under section 1453 this latter factual situation is also embezzlement. The language of section 1453 indicates that embezzlement is committed whether the carrier takes the whole package or individual items. R. Perkins, *Criminal Law* 260–62 (2d ed.1969).

## OUJI–CR 5–23
### EMBEZZLEMENT (APPROPRIATING, SECTION 1454)—ELEMENTS
### THIS INSTRUCTION HAS BEEN DELETED

No person may be convicted of **felony/misdemeanor** embezzlement unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

First, fraudulently;

Second, appropriated;

Third, personal property;

Fourth, **(of value)/(valued at more than $50/$500)**;

Fifth, of another;

Sixth, entrusted to the defendant;

Seventh, as a **trustee/banker/merchant/broker/attorney/agent/ (assignee in trust)/executor/administrator/collector.**

## OUJI–CR 5–24
### EMBEZZLEMENT (SECRETING, SECTION 1454)—ELEMENTS
### THIS INSTRUCTION HAS BEEN DELETED

No person may be convicted of **felony/misdemeanor** embezzlement unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

First, with fraudulent intent to appropriate;

Second, secreted;

Third, personal property;

Fourth, **(of value)/(valued at more than $50/$500)**;

Fifth, of another;

Sixth, entrusted to the defendant;

Seventh, as a **trustee/banker/merchant/broker/attorney/ agent/(assignee in trust)/executor/administrator/collector.**

---

Statutory Authority: 21 O.S.1991 & Supp. 1995, §§ 1454, 1462.

### Committee Comments

The instructions for section 1454 differ from the instructions for section 1452 only in the fifth and seventh elements. Section 1454 protects anyone's property; the fifth element therefore reads "of another." It is the relationship between the embezzler and the owner of the property set forth in the seventh element which makes the crime prosecutable specifically under section 1454. Otherwise, the commentary to the previous embezzlement instructions applies to section 1454.

## OUJI–CR 5–25
### EMBEZZLEMENT (APPROPRIATING, SECTION 1455)—ELEMENTS
#### THIS INSTRUCTION HAS BEEN DELETED

No person may be convicted of **felony/misdemeanor** embezzlement unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

First, fraudulently;

Second, appropriated;

Third, personal property;

Fourth, **(of value)/(valued at more than $50/$500)**;

Fifth, of another;

Sixth, entrusted to the defendant;

Seventh, as **a/an bailee/(attorney in fact)**.

## OUJI–CR 5–26
### EMBEZZLEMENT (SECRETING, SECTION 1455)—ELEMENTS
#### THIS INSTRUCTION HAS BEEN DELETED

No person may be convicted of **felony/misdemeanor** embezzlement unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

First, with fraudulent intent to appropriate;

Second, secreted;

Third, personal property;

Fourth, **(of value)/(valued at more than $50/$500)**;

Fifth, of another;

Sixth, entrusted to the defendant;

Seventh, as **a/an bailee/(attorney in fact)**.

---

Statutory Authority: 21 O.S.1991 & Supp. 1995, §§ 1455, 1462.

#### Committee Comments

Section 1455 creates a separate crime because the person who is punished for embezzlement by the statute is a bailee or an attorney in fact (a person with a power of attorney). The Oklahoma Court of Criminal Appeals ruled in *State v. Rhine*, 773 P.2d 762, 764 (Okl.Cr.1989), that embezzlement may occur under section 1455 if lawful possession is acquired as a result of an involuntary bailment. Except for the seventh element, the elements under section 1455 are identical to elements under the appropriating embezzlement statutes discussed above.

## OUJI–CR 5–27
### EMBEZZLEMENT (APPROPRIATING, SECTION 1456)—ELEMENTS
#### THIS INSTRUCTION HAS BEEN DELETED

No person may be convicted of **felony/misdemeanor** embezzlement unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

First, fraudulently;

Second, appropriated;

Third, personal property;

Fourth, **(of value)/(valued at more than $50/$500)**;

Fifth, of another;

Sixth, entrusted to the defendant;

Seventh, as a **clerk/servant** by virtue of **his/her** employment.

## OUJI–CR 5–28
### EMBEZZLEMENT (SECRETING, SECTION 1456)—ELEMENTS
#### THIS INSTRUCTION HAS BEEN DELETED

No person may be convicted of **felony/misdemeanor** embezzlement unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

First, with fraudulent intent to appropriate;

Second, secreted;

Third, personal property;

Fourth, **(of value)/(valued at more than $50/$500)**;

Fifth, of another;

Sixth, entrusted to the defendant;

Seventh, as a **clerk/servant** by virtue of **his/her** employment.

Statutory Authority: 21 O.S.1991 & Supp. 1995, §§ 1456, 1462.

Committee Comments

The Commission has interpreted section 1456 to create a crime which has identical elements to the other embezzlement crimes, except that to be specifically prosecutable under this section, the defendant must have been entrusted with the property by virtue of his employment. *Byrum v. State*, 507 P.2d 1293 (Okl.Cr.1973). The seventh element distinguishes this crime from the other embezzlement crimes and this instruction from the other embezzlement instructions.

OUJI–CR 5–29
EMBEZZLEMENT (APPROPRIATING, SECTION 341)
BY PUBLIC OFFICER—ELEMENTS

No person may be convicted of embezzlement by public officer unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

First, any deputy/clerk/(public officer)/(officer of the legislature) of (the State)/(any county/city/town); the defendant is a [deputy/employee of a] county/state officer; and

Second, appropriated; the defendant diverted;

Third, to (his/her own use)/(the use of any person not entitled to it); any money appropriated by law;

Fourth, without authority of law; from the purpose and object of the appropriation;

Fifth, (any money)/(anything of value);

Sixth, received by him/her as a/an deputy/clerk/(public officer)/(officer of the legislature);

Seventh, (on behalf of [the people of] [any subdivision of] this State)/(in which the people of [any subdivision of] this State are interested).

Statutory Authority: 21 O.S. 1991, § 341. Supp.2004, § 1451(C).

Notes on Use

This instruction covers only the first paragraph of 21 O.S.1991, § 341.

OUJI–CR 5–30
EMBEZZLEMENT—DEFINITIONS

Administrator—One who is appointed by a court to administer assets and liabilities of a person who died without a will.

Reference: 58 O.S.1991, §§ 251 et seq.

Agent—One who is given the authority to act for and in the name of another.

Reference: *Morrison v. State*, 792 P.2d 1189, 1191 (Okl.Cr.1990); *Smith v. State*, 78 Okl. Cr. 343, 148 P.2d 206 (1944).

Appropriate—Convert to a use not authorized by the true owner or possessor.

References: *Terry v. Water Improvement Dist. No. 5*, 1937 OK 82, 179 Okl. 106, 64 P.2d 904 (1937); *Blake v. State*, 1916 OK CR 91, 12 Okl. Cr. 549, 160 P. 30 (1916).

Assignee in Trust—One who has been given property of another person for payment of the other person's creditors.

Reference: 24 O.S.1991, § 31.

Attorney in Fact—One who is authorized by a written document to act for another.

References: *Matter of Rolater's Estate*, 542 P.2d 219 (Okl.1975); 16 O.S.1991, § 20.

Bailee—One to whom custody and control of personal property is delivered for a particular purpose.

References: *Broaddus v. Commercial Nat'l Bank of Muskogee*, 113 Okl. 10, 237 P. 583 (1925); *Lord v. Oklahoma State Fair Ass'n*, 95 Okl. 294, 219 P. 713 (1923).

Broker—One who is engaged for others in negotiating sales or exchanges of property.

Reference: *Messick v. Johnston*, 155 Okl. 139, 8 P.2d 28 (1931).

~~Carrier—One having under his/her control personal property for the purpose of transportation for hire.~~

~~Reference: 21 O.S.1991, § 1453.~~

~~Executor—One who is named in a person's will to dispose of that person's property according to the terms of the will.~~

~~Reference: 58 O.S.1991, §§ 251 et seq.~~

Fraudulent—With intent to deprive wrongfully the owner or the person who entrusted the property.

References: *Smith v. State,* 78 Okl. Cr. 343, 148 P.2d 206 (1944); ~~21 O.S.1991, § 1461;~~ R. Perkins, Criminal Law 293 (2d ed.1969).

Personal Property—Money, goods, chattels, effects, evidences of rights in action, and written instruments effecting a monetary obligation or right or title to property.

Reference: 21 O.S. ~~1991~~ 2001, § 103.

Secrete—To conceal or ~~hide away~~ secretly transfer.

Reference: Black's Law Dictionary ~~1213 (5th ed. 1979)~~ 1382 (8th ed.2004).

~~Trustee—One legally authorized to deal with property for the use of a trust.~~

~~Reference: 60 O.S. Supp.1995, § 171.~~

Value—Fair market value or reasonable selling price.

Reference: 21 O.S. ~~Supp. 1995~~ 2001, § 1462.

## OUJI–CR ~~3-40~~ 5–114A
### RECEIVING UNLAWFUL PROCEEDS— ELEMENTS

No person may be convicted of receiving unlawful proceeds unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

First, **knowingly/intentionally**;

Second, **receiving/acquiring** proceeds;

Third, knowing that the proceeds were derived from a violation of [**Specify Nature of Statutory Violation,** *e.g.,* **trafficking in illegal drugs**]; and

Fourth, **knowingly/intentionally**;

[**Fifth, concealing the proceeds**].

**OR**

[**Fifth, engaging in transactions involving the proceeds**].

You are further instructed that the elements of [**Specify Nature of Statutory Violation**] are [**Specify Elements from Statute or Applicable OUJI–CR**].

---

Statutory Authority: 21 O.S. Supp.2004, § 2001.

## OUJI–CR 6–3A
### DRUG OFFENSES: POSSESSION OF ~~THREE OR MORE~~ PRECURSOR SUBSTANCES WITH INTENT TO MANUFACTURE

No person may be convicted of possessing a precursor substance with the intent to manufacture a controlled dangerous substance unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

First, **knowingly/intentionally**;

Second, possessing;

Third, the following precursor **substance/substances**: [**Names of Precursor Substances listed in 63 O.S 2001, § 2–322 or 2–401(G)** ].

Fourth, with the intent to use the precursor **substance/substances** to manufacture;

Fifth, the controlled dangerous substance of [**Name of Substance**].

[You may, but are not required to, regard proof that the defendant **knowingly/intentionally** possessed anhydrous ammonia in an unauthorized container~~)/(three or more of the following precursor substances: [Names of Precursor Substances Listed in 63 O.S.2001, § 2–322 or 2–401(G) ]~~) as sufficient evidence that the defendant intended to use the ~~(anhydrous ammonia)/(precursor substances)~~ to manufacture [**Name of Controlled Dangerous Substance**]. The defendant's intent to use the anhydrous ammonia ~~(precursor substances)~~ to manufacture [**Name of Controlled Dangerous Substance**] must be proved beyond a reasonable doubt.]

Statutory Authority: 63 O.S. Supp. ~~2001~~ 2004, § 2–401(G).

## Notes on Use

The bracketed sentences after the elements should be included with the instruction if evidence has been introduced that the defendant possessed ~~either~~ anhydrous ammonia in an unauthorized container ~~or three or more precursor substances.~~

### OUJI–CR 6–3B
### DRUG OFFENSES: ~~POSSESSION OF ANHYDROUS AMMONIA IN AN UNAUTHORIZED CONTAINER WITH INTENT TO MANUFACTURE~~ ENDEAVORING TO MANUFACTURE—ELEMENTS

~~No person may be convicted possessing anhydrous ammonia in an unauthorized container with the intent to manufacture a controlled dangerous substance unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:~~

~~First, knowingly/intentionally;~~

~~Second, possessing;~~

~~Third, anhydrous ammonia in an unauthorized container;~~

~~Fourth, with the intent to use the anhydrous ammonia to manufacture;~~

~~Fifth, the controlled dangerous substance of [Name of Controlled Dangerous Substance].~~

~~[You may, but are not required to, regard proof that the defendant knowingly/intentionally possessed anhydrous ammonia in an unauthorized container as sufficient evidence that the defendant intended to use the anhydrous ammonia to manufacture [Name of Controlled Dangerous Substance. The defendant's intent to use the anhydrous ammonia to manufacture [Name of Controlled Dangerous Substance] must be proved beyond a reasonable doubt.]~~

No person may be convicted of **offering/soliciting/attempting/ endeavoring/conspiring** to manufacture a controlled dangerous substance unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

First, **knowingly/intentionally**;

Second, **offering/soliciting/attempting/endeavoring/conspiring**;

Third, to manufacture;

Fourth, the controlled dangerous substance of **[Name of Substance]**.

Statutory Authority: 63 O.S.2001, § ~~2–401 (G)~~ 2–408.

~~Notes on Use~~

~~The bracketed sentences after the elements should be included with the instruction if evidence has been introduced that the defendant possessed anhydrous ammonia in an unauthorized container.~~

### OUJI–CR 6–3C
### DRUG OFFENSES: AGGRAVATED MANUFACTURING—ELEMENTS

No person may be convicted of aggravated manufacturing a controlled dangerous substance unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

First, **knowingly/intentionally**;

Second, **manufacturing/(attempting to manufacture)**;

Third, **[Specify Name and Amount of Substance Listed in 63 O.S Supp.2004, § 2–401(G)(3) ]**.

Statutory Authority: 63 O.S Supp.2004, § 2–401(G)(3).

### OUJI–CR 6–5
### DRUG OFFENSES: DISTRIBUTING/MANUFACTURING UNDER SEC. 2–401(F)—ELEMENTS

No person may be convicted of **distributing/manufacturing** a controlled dangerous substance near a **[Specify Location Listed in 63 O.S. Supp. ~~2000~~ 2004, § 2–401(F) ]** unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

First, **knowingly/intentionally**;

Second, (transporting with the intent to distribute)/distributing/(possessing with the intent to distribute)/(manufacturing)/(attempting to manufacture);

Third, the controlled dangerous substance of [Name of Substance];

**OR**

Third, [If Aggravated Manufacturing, Specify Name and Amount of Substance Listed in 63 O.S Supp.2004, § 2–401(G)(3) ];

Fourth, to a person in/on/(within 2,000 feet of) [the real property comprising] [Specify Location Listed in 63 O.S Supp. ~~2000~~ 2004, § 2–401(F) ].

---

Statutory Authority: 63 O.S Supp. ~~2000~~ 2004, § 2–401(F).

**OUJI–CR 6–18**
**DRIVING A MOTOR VEHICLE (WHILE UNDER THE INFLUENCE OF ALCOHOL)/(WITH ALCOHOL CONCENTRATION OF .08 OR MORE)—ELEMENTS**

No person may be convicted of driving a motor vehicle (while under the influence of alcohol)/(with a blood/breath alcohol concentration of .08 or more) unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

First, driving;

Second, (with a blood/breath alcohol concentration of 0.08 or more)/(while under the influence of alcohol);

Third, a motor vehicle;

Fourth, on a highway/street/(public road)/turnpike/(public place)/(private road/street/ alley/ lane which provides access to one or more single/(multi-family) dwellings);

[Fifth, the blood/breath alcohol test was administered on a sample taken from the defendant (within 2 hours after arrest)/(as soon as practical after the fatality/injury accident) ).]

---

Statutory Authority: 47 O.S.2001 & Supp. 2004, § 11–902, 10–104(B).

Notes on Use

The Fifth Element should be read only for prosecutions under 47 O.S. ~~2001~~ Supp. 2003, § 11–902(A)(1). Read literally, section 11–902(A)(1) would make it a crime for a person to have a blood or breath alcohol concentration of .08 or more at the time of a test administered within two hours after a person's arrest, even if the arrest occurred long after the person had ceased driving and there was evidence that the person had consumed additional alcohol between the driving and the time of the test. To avoid such a result, the Committee has drafted the instruction to require a nexus between the driving and the excessive blood or breath alcohol concentration. In *Sanders v. State*, 2002 OK CR 42, ¶ 15, 60 P.3d 1048, 1050, the Oklahoma Court of Criminal Appeals held that section 11–902(A)(1) applied in a situation where a defendant is arrested at an accident scene or soon after an accident, but not where the arrest occurs long after the accident.

Driving under the influence of alcohol must be defined if the prosecution is under 47 O.S. ~~2001~~ Supp.2004, § 11–902(A)(2). *Bernhardt v. State*, 1986 OK CR 76, ¶ 4, 719 P.2d 832, 833. For ~~the~~ the definition of "under the influence," see OUJI–CR 6–35, *infra*. The *Bernhardt* case also held that driving while impaired is a lesser included offense for driving under the influence of alcohol. 1986 OK CR 76, ¶ 3, 719 P.2d at 833.

The instruction on sentencing (see OUJI–CR 10–13, *infra*) should include the sentencing options for alcohol treatment and community services that are provided for in 47 O.S. Supp.2003, § 11–902(A)(1). *See Hicks v. State*, 2003 OK CR 10, ¶ 4, 70 P.3d 882, 883.

**OUJI–CR 6–24**
**DRIVING (UNDER THE INFLUENCE)/(WHILE IMPAIRED)— CHEMICAL TEST EVIDENCE DEFINED**

If you find that a chemical analysis of the defendant's blood/breath was performed on

a sample taken from the defendant within two hours of (**within 2 hours after arrest**)/(**as soon as practical after the fatality/injury accident**), then the results of this analysis may be considered by you as to the issue of whether (**the defendant was under the influence of alcohol**)/(**the defendant's ability to drive a motor vehicle was impaired**).

### [Use for Driving Under the Influence]

If you are convinced that the amount of alcohol, by weight or volume, in the defendant's blood was eight-hundredths of one percent (0.08%) or greater, then you may find the defendant to have been under the influence of alcohol. If, however, after considering the chemical analysis together with all other evidence in the case, you entertain a reasonable doubt as to whether the defendant was under the influence, then you should find **him/her** not to have been under the influence of alcohol.

### [Use for Driving While Impaired]

If you are convinced that the amount of alcohol, by weight or volume, in the defendant's blood was more than five-hundredths of one percent (0.05%), then you may consider this evidence on the issue of whether the defendant's ability to drive a motor vehicle was impaired by alcohol. However, no person may be found to have been under impaired ability solely because of a blood alcohol count above 0.05%. You must find, in addition, and beyond a reasonable doubt, that the person's driving was affected by the consumption of alcohol to the extent that the public health and safety were threatened, or that the person's operation of a motor vehicle violated a State statute or local ordinance.

If you are convinced that the amount of alcohol, by weight or volume, in the defendant's blood was five-hundredths of one percent (0.05%) or less, then you must find the defendant not to have been under the influence of alcohol, unless you find by other competent evidence, and beyond a reasonable doubt, that the (**defendant's ability to drive a motor vehicle was impaired by alco-**

hol)/(**defendant was under the influence of alcohol**).

---

Statutory Authority: 47 O.S.2001, § 756.

### Notes on Use

The second paragraph is for prosecutions for driving under the influence and the third paragraph is for prosecutions for driving while impaired.

### Committee Comments

Section 756, as amended by the Legislature in 1972, sets forth the percent of alcohol in the blood which is evidence that the person (1) was not under the influence of alcohol; (2) was operating a motor vehicle with impaired ability; or, (3) was under the influence of alcohol. Section 11–902 punishes for the latter possibility, while section 756 creates a crime for the second possibility. Driving with impaired ability is a misdemeanor, although the fine is more harsh for second and subsequent offenses. Section 761 sets forth the punishment for the crime of driving a motor vehicle with impaired ability.

Under the literal terms of 47 O.S. Supp. 2002, § 11–902(A), the blood or breath alcohol concentration test must be administered within two hours after the defendant's arrest. Nevertheless, the Oklahoma Court of Criminal Appeals decided in *Sanders v. State*, 2002 OK CR 42, ¶¶ 6–7, 60 P.3d 1048, 1051, that this requirement was not applicable in the circumstances where a blood alcohol test was administered within two hours after a fatality accident in which the defendant could have been arrested at the scene, but was not arrested until approximately one month later.

Section 756 uses the word "operate," but in light of *Bearden v. State*, 1967 OK CR 133, 430 P.2d 844 (Okl.Cr.1967), and *Parker v. State*, 1967 OK CR 7, 424 P.2d 997 (Okl.Cr.1967), indicating that "drive" and "operate" are synonymous, the Commission has used the word "drive" as an element to promote consistency in language among the various instructions.

The crime created by section 756 is a lesser included offense of the crime created by 47 O.S. ~~2001~~ Supp.2002, § 11–902. *Bernhardt v. State*, 1986 OK CR 76, ¶ 3, 719 P.2d 832, 833 ~~(Okl.Cr.1986)~~.

## OUJI–CR 6–29
### ELUDING/(ATTEMPTING TO ELUDE) A (PEACE OFFICER)/(GAME RANGER)—ELEMENTS

No person may be convicted of **eluding/(attempting to elude)** a **(peace officer)/(game ranger)** unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

First, a driver of a motor vehicle;

Second, received a red light and siren from a **(peace officer)/(game ranger)** ~~officer~~;

Third, showing the **officer's/ranger's** vehicle to be an official **police/sheriff/(highway patrol)/(State game ranger)** vehicle and directing the driver to bring his/her vehicle to a stop; **and**

Fourth, willfully [**eluded the officer/ranger**]/[**attempted to elude the officer/ranger (by increasing his/her speed)/(extinguishing his/her lights)/(in any manner)**].

---

Statutory Authority: 21 O.S.1991, § 540A.

### Notes on Use

This instruction is for use in ~~felony~~ misdemeanor prosecutions under 21 O.S. ~~1991~~ 2001, § 540A(A). OUJI–CR ~~629A~~6–30 is for ~~misdemeanor~~ felony prosecutions under 21 O.S. ~~1991~~ 2001, § 540A(B **and** C). "Peace officer" is defined in OUJI–CR ~~634~~ 6–35.

### Committee Comments

Section 540A of Title 21 was amended in 1981 by adding game rangers as a classification of officials who could be the subjects of evasive action by vehicle drivers. *See Kellog v. State*, 1988 OK CR 225, 762 P.2d 993 ~~(Okl.Cr.1988)~~ (affirming conviction for eluding game ranger). In addition, the maximum punishment by fine was increased from $1000 to $2000.

The Oklahoma Court of Criminal Appeals affirmed a conviction under section 540A even though the peace officer did not use a siren in *Aldridge v. State*, 1984 OK CR 7, 674 P.2d 553 ~~(Okl.Cr.1984)~~. The officer's patrol vehicle was not equipped with a siren, because it had been recently purchased, and so ~~the~~ he flashed his emergency light and honked his horn at the defendant. There was also substantial evidence that the defendant knew that the person requesting her to stop was a peace officer. Under these circumstances, the Court of Criminal Appeals ruled that the prosecution met its burden of proof. *Id.* at ¶ 4, 674 P.2d at 553.

In *Hayes v. State*, 1977 OK CR 219, 566 P.2d 1172, the Court of Criminal Appeals held that the fact that the police officer temporarily lost sight of the defendant when the car the defendant was driving disappeared over a hill was insufficient evidence to establish that a change of drivers could have occurred. In the civil case of *State ex rel. Oklahoma Dept. of Public Safety v. Ryan*, 1978 OK CIV APP 47, 591 P.2d 1187 ~~(Okl.App.1978)~~, the Court of Appeals held that one violating the provisions of this statute must have acted intentionally and not through negligence. Section 540A contains a specific attempt provision. For this reason, the general attempt statute, 21 O.S. ~~1991~~ 2001, § 44, is inapplicable. *See Ex parte Smith*, 95 Okl. Cr. 370, 246 P.2d 389 (1952).

## OUJI–CR 6–30
### (CAUSING AN ACCIDENT)/(ENDANGERING ANOTHER) WHILE ELUDING/(ATTEMPTING TO ELUDE) AN OFFICER—ELEMENTS

No person may be convicted of **(causing an accident)/(endangering another)** while **eluding/(attempting to elude)** a **(peace officer)/(game ranger)** unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

First, a driver of a motor vehicle;

Second, received a red light and siren from a **(peace officer)/(game ranger)** ~~officer~~;

Third, showing the **officer's/ranger's** vehicle to be an official **police/sheriff/(highway patrol)/(State game ranger)** vehicle and directing the driver to bring his/her vehicle to a stop;

Fourth, willfully [**eluded the officer/ranger**]/[**attempted to elude the officer/ranger (by increasing his/her speed)/(extinguishing his/her lights)/(in any manner)** ]; and,

Fifth, while **eluding/(attempting to elude)** the **officer/ranger**;

[Sixth, the driver caused an accident;

Seventh, that resulted in great bodily injury to another person].

### OR

[Sixth, the driver endangered another person].

[Great bodily injury means bodily injury **(that creates a substantial risk of death)/(causes [serious permanent disfigurement]/[protracted loss/impairment of the function] of a bodily member/organ]** ).].

---

Statutory Authority: 21 O.S. ~~1991~~ 2001, § 540B and C.

### Notes on Use

This instruction is for use in felony prosecutions under 21 O.S. ~~1991~~ 2001, § 540A(B and C). OUJI–CR ~~629~~ 6–29 is for misdemeanor prosecutions under 21 O.S. ~~1991~~ 2001, § 540A(A). "Peace officer" is defined in OUJI–CR 6–35. The bracketed definition of great bodily injury should be used only for prosecutions under 21 O.S.2001, § 540A(C).

### OUJI–CR 6–60
### TERRORISM—ELEMENTS

No person may be convicted of terrorism unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

First, knowingly committed an act;

Second, of violence;

Third, that resulted in **(damage to property)/(personal injury)**;

Fourth, with the intent to coerce;

Fifth, a **(civilian population)/government**;

Sixth, into granting illegal **political/economic** demands.

### OR

First, knowingly committed an act;

Second, with the intent to incite violence;

Third, in order to create apprehension of;

Third, **(bodily injury)/(damage to property)**/;

Fourth, in order to coerce;

Fifth, a **(civilian population)/government**;

Sixth, into granting illegal **political/economic** demands.

---

Statutory Authority: 21 O.S. Supp.2004, § 1268.1.

### OUJI–CR 6–61
### TERRORISM HOAX—ELEMENTS

No person may be convicted of terrorism hoax unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

First, willfully;

Second, simulated;

Third, an act of terrorism;

Fourth, as a **joke/hoax/prank/trick**;

Fifth, against a **place/population/business/agency/government**;

[Sixth, by intentionally;

Seventh, using a substance;

Eighth, to cause **fear/intimidation/anxiety**;

Ninth, and a reasonable belief;

Tenth, that the substance is **used/placed/sent/delivered/employed** as an act of biochemical terrorism;

Eleventh, that required an **(emergency response)/(evacuation/quarantine of any person/place/article)** ].

**OR**

[Sixth, by **a/an act/threat** of **violence/sabotage/damage/harm**;

Seventh, against a **population/place/infrastructure**;

Eighth, that caused **fear/intimidation/anxiety**;

Ninth, and a reasonable belief by any victim;

Tenth, that the **act/threat** is an act of terrorism;

Eleventh, that is intended to disrupt a **place/population/business/agency/government**].

---

Statutory Authority: 21 O.S. Supp.2004, § 1268.1.

### Notes on Use

For definitions of biological terrorism and terrorism, see OUJI–CR 6–62, *infra.*

### OUJI–CR 6–62
### TERRORISM—DEFINITIONS

Biochemical Terrorism—An act of terrorism involving any biological organism or chemical or combination of organisms or chemicals that is capable of and intended to cause death, illness or harm to any human or animal upon contact or ingestion, or harm to any food or water supply or other product consumed by humans or animals.

Reference: 21 O.S. Supp.2004, § 1268.1.

Terrorism—An act of violence resulting in damage to property or personal injury perpetrated to coerce a civilian population or government into granting illegal political or economic demands; or conduct intended to incite violence in order to create apprehension of bodily injury or damage to property in order to coerce a civilian population or government into granting illegal political or economic demands. Peaceful picketing or boycotts and other nonviolent action is not terrorism.

Reference: 21 O.S. Supp.2004, § 1268.1.

### OUJI–CR 8–25
### DEFENSE OF ENTRAPMENT—REQUIREMENTS

Where a person has no previous intent or purpose to violate the law, but is induced or persuaded by law enforcement officers to commit a crime, **he/she** is entitled to the defense of entrapment, because the law as a matter of policy forbids a conviction in such a case.

On the other hand, where a person already has the readiness and willingness to break the law, the mere fact that a police officer provides what appears to be a favorable opportunity is no defense.

If you should find from the evidence that, before anything at all occurred respecting the alleged offense involved in this case, the defendant was ready and willing to commit a crime such as that charged in the information whenever opportunity was offered and the police merely offered the opportunity, the defendant is not entitled to the defense of entrapment.

If, on the other hand, you should find that the defendant had no previous intent or purpose to commit any offense of the character here charged, and did so only because **he/she** was induced or persuaded by some agent of the police, then the government has seduced an innocent person, and the defense of entrapment is a good defense.

### Committee Comments

This instruction is substantially similar to that approved by the Court of Criminal Appeals in *Robinson v. State,* 1973 OK CR 152, 507 P.2d 1296 (Okl.Cr.1973), overruled *on other grounds, McInturff v. State,* 1976 OK CR 226, ¶ 12, 554 P.2d 837, 841 (Okl. Cr.1976). Entrapment occurs when the planning and volitional conduct associated with an offense are entirely the products of an officer or a person acting under the direction of an officer, and the officer or his agent procures the commission of the offense by a person who, but for the artifice of the officer, would not have perpetrated it. *Kiddie v. State,* 1977 OK CR 301, 574 P.2d 1042 (Okl.Cr.1977); *Dupree v. State,* 1973 OK CR 53, 506 P.2d 974

(Okl.Cr.1973); *McCart v. State,* 1967 OK CR 222, 435 P.2d 419 (Okl.Cr.1967); *Riddle v. State,* 1962 OK CR 98, 374 P.2d 634 (Okl.Cr.1962); *Crosbie v. State,* 1958 OK CR 78, 330 P.2d 602 (Okl.Cr.1958); *Savage v. State,* 1956 OK CR 112, 304 P.2d 344 (Okl.Cr.1956); *Bayouth v. State,* 1956 OK CR 26, 294 P.2d 856 (Okl.Cr.1956); *Lee v. State,* 66 Okl. Cr. 399, 92 P.2d 621 (1939). *See also Jacobson v. United States,* 503 U.S. 540, 554 (1992) (prosecution was required to offer evidence of defendant's predisposition to commit criminal violate the law independent of the government's acts and beyond a reasonable doubt). Merely furnishing the defendant with an opportunity to commit a crime is not entrapment. *Hunnicutt v. State,* 1988 OK CR 91, ¶ 3, 755 P.2d 105, 107–08 (Okl.Cr.1988). The defense of entrapment is not available unless the officer or the person acting under his direction first suggested perpetration of the criminal act, or lured or persuaded the defendant to partake of the criminal conduct. *Stevens v. State,* 51 Okl. Cr. 451, 2 P.2d 282 (1931); *Warren v. State,* 35 Okl. Cr. 430, 251 P. 101 (1926). The court has analyzed the availability of the entrapment defense as follows:

> One who is instigated, induced, or lured by officer of law or other person, for purposes of prosecution, into commission of crime which he had otherwise no intention of committing may avail himself of the defense of entrapment. Principle of entrapment places no limitation on right of officers to obtain evidence of any crime originating in mind of another; and an officer may, when acting in good faith with view to detecting crime, make use of deception, trickery or artifice.

*Robinson, supra,* 1973 OK CR 152, ¶ 11, 507 P.2d at 1299 (citations omitted; emphasis in original), overruled on burden of proof, *McInturff v. State,* 1976 OK CR 226, ¶ 12, 554 P.2d 837, 841 (Okl.Cr.1976).

Where the evidence indicates that entrapment may have occurred, the issue concerning the existence of the requisite mental state to commit the crime charged is reserved to the jury. *Slagel v. State,* 1988 OK CR 284, ¶ 9, 766 P.2d 355, 357 (Okl.Cr.1988) ("A question of entrapment is generally one for the jury, rather than for the court."); *Ryans v. State,* 1966 OK CR 153, 420 P.2d 556 (Okl.Cr.1966).

The Court of Criminal Appeals discussed the defense of sentencing entrapment in *Leech v. State,* 2003 OK CR 4, 66 P.3d 987, and pointed out how OUJI–CR 8–25 should be modified if the defense of sentencing entrapment has been raised. It stated:

> In a case where sufficient evidence is presented to raise the issue of sentence entrapment, this language must be modified to make it clear to the jury that the issue is whether or not the defendant, although intending to commit a lesser offense, has been entrapped into committing a greater offense. If the defendant had no previous intent to commit the greater crime or did not become ready and willing to commit a greater crime during the course of the transaction, even though predisposed to commit the lesser crime, then a finding that law enforcement agents committed sentencing entrapment would require that the defendant be found not guilty of the greater crime, and guilty of the lesser offense.

2003 OK CR 4, ¶ 10, 66 P.3d at 990.

### OUJI–CR 8–36
### DEFENSE OF VOLUNTARY INTOXICATION—REQUIREMENTS

The crime of [**Crime Charged in Information/Indictment**] has as an element the (specific criminal intent of [**Specify Specific Mens Rea**])/(special mental element of [Specify Special Mental State]). A person is entitled to the defense of voluntary intoxication if that person was incapable of forming the (specific criminal intent)/(special mental element of the crime) because of **his/her** intoxication.

---

Statutory Authority: 21 O.S. 1991 2001, §§ 153, 704.

## Committee Comments

In contrast with several other defenses, insanity, for example, the defense of ~~volun~~ voluntary intoxication is primarily a mitigating, as opposed to an exculpating, defense. ~~Intoxication~~ Voluntary intoxication is available as a defense only when the crime with which the defendant is charged has as its mens rea element a specific criminal intent ~~or a special mental element~~. *See Jones v. State,* 1982 OK CR 112, ¶ 13, 648 P.2d 1251, 1255 ~~(Okl.Cr.1982)~~ ("Stated simply, voluntary intoxication is no defense to a crime, except to the extent that the intoxication rendered the defendant incapable of forming the necessary mental element."). ~~Intoxication~~ Voluntary intoxication is relevant to disprove the existence of a specific criminal intent ~~or a special mental element~~ and thereby the commission of the crime, but voluntary intoxication does not excuse the defendant from criminal liability for a lesser included offense which does not have such a mens rea requirement. As stated in R. Perkins, *Criminal Law* 889 (2d ed.1969), "voluntary drunkenness is no excuse for an actus reus."

The above interpretation is that which the Court of Criminal Appeals has given to 21 O.S. ~~1991~~ 2001, § 153. *Huffman v. State,* 24 Okl. Cr. 292, 217 P. 1070 (1923). Moreover, the court has interpreted 21 O.S. ~~1991~~ 2001, § 704, to mean that a homicide is not automatically mitigated simply because of intoxication. As long as the homicide was committed with "malice aforethought," the crime is murder even though the defendant was drunk. However, if intoxication prevented the formation of the required specific intent to kill, then under section 153 intoxication would be a mitigating defense, and the defendant would be punishable for any appropriate lesser included offense. 21 O.S. ~~1991~~ 2001, §§ 701.7, 701.8, 711.

The Court of Criminal Appeals has specifically ruled that the defense of intoxication is not available in murder cases. *Perryman v. State,* 1916 OK CR 76, 12 Okl. Cr. 500, 159 P. 937 ~~(1916)~~. *See also Couch v. State,* 1962 OK CR 130, 375 P.2d 978 ~~(Okl.Cr.1962)~~ (second degree burglary); *Gower v. State,* 1956 OK CR 49, 298 P.2d 461 ~~(Okl.Cr.1956)~~ (larceny of automotive driven vehicles); *Kerr v. State,* 1954 OK CR 131, 276 P.2d 284 ~~(Okl.Cr.1954)~~ (larceny of domestic animals); *Walker v. State,* 93 Okl. Cr. 251, 226 P.2d 998 (1951); *Huffman, supra; Cheadle v. State,* 1915 OK CR 59, 11 Okl. Cr. 566, 149 P. 919 ~~(1915)~~ (murder). ~~Intoxication~~ Voluntary intoxication should be available as a defense, however, as to any crime that has a specific criminal intent ~~or special mental element~~ as the mens rea requirement.

Voluntary intoxication is not a defense to the crime of rape, because rape does not have a specific criminal intent ~~or special mental element~~ mens rea requirement. *Boyd v. State,* 1977 OK CR 322, 572 P.2d 276 ~~(Okl.Cr.1977)~~; *Kitchen v. State,* 61 Okl. Cr. 435, 69 P.2d 411 (1937). Voluntary intoxication is not a defense to a crime having a general mens rea requirement, such as criminal negligence. R. Perkins, *Criminal Law* 900 (2d ed.1969).

It seems appropriate at this point to emphasize that insanity and voluntary intoxication are separate defenses, although both defenses may involve the effect of alcohol upon a person's mental abilities. Several cases have seemingly confused the two defenses ~~because of confusion on the part of defense counsel~~. *Couch v. State, supra; Myers v. State,* 83 Okl. Cr. 177, 174 P.2d 395 (1946).

As stated above, voluntary intoxication is only a defense to a crime which has a specific mens rea ~~or special mental state~~ as an element of the crime. The defendant is permitted to introduce evidence that his drunken state made it impossible for him to have formed the specific mens rea ~~or special mental state~~ required. If the evidence indicates that the drunkenness prevented the defendant from forming the specific mens rea ~~or special mental state~~ necessary, then that element of the crime has not been established and, as a consequence, the crime itself has not been proved. Since the defendant was only in a temporary state of drunkenness, probably voluntarily induced, he is still subject to criminal liability for lesser included of-

fenses contained within the crime charged. The defendant is still held accountable for these lesser included offenses which do not have a specific mens rea ~~or special mental state~~ as an element. In effect, the defendant claims that drunkenness prevented formation of the necessary mens rea of the crime charged, but does not claim that his mental faculties have been destroyed. ~~Intoxication~~ Voluntary intoxication is, therefore, primarily a mitigating defense; *i.e.*, it prevents conviction for certain crimes but does not entirely exculpate the defendant from criminal liability.

Insanity, by contrast, is an exculpating defense. If a defendant can present evidence which establishes that he/she was insane ~~at~~ during the commission of the criminal act(s), the defendant is entirely free from criminal liability. The defendant claims that he/she is not accountable to the criminal law because his/her mental faculties were destroyed to such an extent that he cannot know right from wrong. The defendant claims that he/she was incapable of forming any mental state concerning the rightness or wrongness of his actions because of insanity at the time of the alleged crime.

Insanity may be brought about by numerous conditions, including chronic intoxication. A person can use alcohol so excessively and so continuously that eventually the alcohol destroys the mental faculties of the alcoholic. This condition, known as delirium tremens, thus serves as the underlying cause of insanity. When the defendant claims that his mental faculties have been destroyed by delirium tremens, the appropriate defense is the defense of insanity, not the defense of voluntary intoxication. *Mott v. State*, 94 Okl. Cr. 145, 232 P.2d 166 (1951).

## OUJI–CR 8–38
## DEFENSE OF VOLUNTARY INTOXI-CATION—BURDEN OF PROOF

It is the burden of the State to prove beyond a reasonable doubt that the defendant formed the ~~(specific criminal intent)/(special mental element)~~ of the crime of

[**Crime Charged in Information/Indictment**]. If you find that the State has failed to sustain that burden, by reason of the intoxication of [**Name of Defendant**], then [**Name of Defendant**] must be found not guilty of [**Crime Charged in Information/Indictment**]. You may find [**Name of Defendant**] guilty of [**Lesser Included Offense**], if the State has proved beyond a reasonable doubt each element of the crime of [**Lesser Included Offense**].

### Notes on Use

Unless the evidence of the prosecution has raised the issue, the defendant must come forward with evidence concerning intoxication in order to raise it as a defense. If the defendant fails to come forward with evidence of intoxication, or fails as a matter of law to come forward with sufficient evidence, the issue of intoxication is not raised in the trial, and the trial judge should not instruct on intoxication. *See Charm v. State*, 1996 OK CR 40, ¶ 11, 924 P.2d 754, 761 ~~(Okl.Cr.1996)~~. If the defendant presents sufficient evidence to raise the issue of intoxication, or if the evidence of the prosecution raises the issue of intoxication, the trial judge should instruct the jury on intoxication because the trial judge has a duty to instruct on the ~~defendants~~ defendant's theory of the case. No instructions on the defendant's burden to come forward with evidence, or on whether the defendant has presented sufficient evidence, are presented because these are questions of trial procedure and of law, which are beyond the legitimate concern of the jury.

### Committee Comments

This instruction sets forth the appropriate burden of proof that rests upon the State. *Kerr v. State*, 1954 OK CR 131, 276 P.2d 284 ~~(Okl.Cr.1954)~~. It is drafted, however, to inform the jury very clearly that the defendant is to be acquitted only of the crime having a specific mens rea ~~or special mental element~~, but not of a lesser included offense, if one exists, lacking such a mens rea requirement.

The use of the following instruction was approved in *Oxendine v. State,* 1958 OK CR 104, 335 P.2d 940 (Okl.Cr.1958):

> You are instructed that homicide committed with a design to effect death is not the less murder because the perpetrator was in a state of voluntary intoxication at the time. However, one of the elements of the crime of murder is an intent to effect the death of the person killed and if you find that the defendant at the time of the killing was so completely drunk as to be totally unable to form an intent to kill, or if you have a reasonable doubt thereof, you should not find the defendant guilty of murder. The homicide, under such circumstances, unless otherwise excusable, would amount to manslaughter in the first degree.

*Id.* at ¶ 10, 335 P.2d at 940. *See also Charm v. State,* 1996 OK CR 40, ¶ 6, 924 P.2d 754, 774 (Okl.Cr.1996) (Lane, J., dissenting) (noting that Oxendine has been followed in three other cases).

## OUJI–CR 8–39
## DEFENSE OF VOLUNTARY INTOXICATION—DEFINITIONS

Drugs—Substances intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in a human or other animal; substances other than food intended to affect the structure or any function of the body of a human or other animal; under the law, the substance [**Name of Substance**] is a drug.

Note: Name, as applicable, substances listed in the Uniform Controlled Dangerous Substances Act, 63 O.S. Supp. 1996 2001 & Supp.2004, §§ 2–101 et seq., United States and homeopathic pharmacopoeias and National Formulary.

References: 63 O.S. Supp. 1996 2001 & Supp.2004, §§ 2–101 et seq.

Incapable of Forming Special Mental Element—The state in which one's mental powers have been overcome through intoxication, rendering it impossible to form the special

state of mind known as corruptly/knowingly/willfully/maliciously.

Note: Exclude "maliciously" if the crime charged is murder in the first degree. This word is defined specifically for malice aforethought in 21 O.S.1991, § 701.7, as the specific intent to kill.

References: R. Perkins, Criminal Law 900–02; 21 O.S.1991, §§ 92, 94, 95, 96.

Incapable of Forming Specific Criminal Intent—The state in which one's mental powers have been overcome through intoxication, rendering it impossible to form a specific criminal intent.

Reference: Miller v. State, 1977 OK CR 189, ¶ 18, 567 P.2d 105, 109 (Okl.Cr. 1977). Regarding other forms of mens rea, see *Fairchild v. State,* 1999 OK CR 49, ¶¶ 51, 52, 998 P.2d 611, 622–23.

Intoxication—A state in which a person is so far under the influence of an intoxicating liquor/drug/substance to such an extent that his/her (passions are visibly excited)/(judgment is impaired).

Reference: *Findlay v. City of Tulsa,* 1977 OK CR 113, ¶ 14, 561 P.2d 980, 984 (Okl.Cr.1977).

Narcotics Narcotic Drug—Opium, coca leaves, opiates, cocaine, ecgonine, and all isomers, compounds and preparations derivative therefrom.

Reference: 63 O.S. Supp. 1996 2004, § 2–101 (22 26 ).

## OUJI–CR 10–17
## RETURN OF VERDICT—
## PRIOR CONVICTIONS ADMITTED (SINGLE STAGE)

If you find beyond a reasonable doubt that the defendant committed the crime of [**Crime Charged**], you shall return a verdict of guilty by marking the Verdict Form appropriately. If you have a reasonable doubt of the defendant's guilt to the charge of [**Crime Charged**], or you find that the State has failed to prove each element of [**Crime Charged**] beyond a reasonable doubt, you shall return a verdict of not guilty by marking the Verdict Form appropriately.

The defendant has admitted that **he/she** has [**Specify Number**] previous **convic-**

tion(s). You may not consider **this/these** previous **conviction(s)** as proof of guilt in the case before you. You may consider the previous **conviction(s)** for the purpose of determining the punishment if you find that the defendant is guilty of the crime of [**Crime Charged**] in the present case.

The punishment for [**Crime Charged**] after [**Number**] previous **conviction(s)** is imprisonment in the State penitentiary for a term of ~~not less/more than 5/10/20~~ [**Specify Term Provided in 21 O.S.2001 & Supp.2004, § 51.1(A), 51.1a, or 51.3**] years. When you have decided on the proper punishment, you should fill in the appropriate space on the verdict form and return the verdict to the Court.

## Notes on Use

This instruction should be used if the defendant has waived bifurcation and admitted the prior convictions or the prior convictions were introduced by the prosecutor after the defendant took the stand.

A Verdict Form to go with this instruction is provided in OUJI–CR 10–18, *infra.*

## Committee Comments

The defendant may waive bifurcation expressly so that the jury will be made aware of the severity of punishment when it makes its determination of guilt. *See Jones v. State,* 1974 OK CR 172, ¶ 18, 527 P.2d 169, 173 (waiver of bifurcation is within the discretion of the trial court), *overruled on other grounds, Fulton v. State,* 1975 OK CR 200, ¶ 4, 541 P.2d 871, 872. *But cf. Lenion v. State,* 1988 OK CR 230, 763 P.2d 381 (no waiver if defendant merely fails to request bifurcation). *See also Eslinger v. State,* 1987 OK CR 53, ¶ 19, 734 P.2d 830, 834 (defendant not entitled to bifurcated trial if he confessed to former convictions under oath); *Ray v. State,* 1990 OK CR 15, ¶¶ 7–8, 788 P.2d 1384, 1386 (bifurcation waived when defendant testified in own behalf); *Reed v. State,* 1978 OK CR 58, ¶¶ 14–17, 580 P.2d 159, 162–63 (two-stage proceeding was not necessary where defendant admitted prior conviction on cross-examination).

## OUJI–CR 10–19
## RETURN OF VERDICT—
## PRIOR CONVICTIONS STIPULATED (SECOND STAGE)

By your verdict in the first part of this trial you have already found the defendant guilty of the crime of [**Crime Charged**]. You must now determine the proper punishment.

The defendant has admitted that **he/she** has [**Specify Number**] previous **conviction(s)**. The punishment for [**Crime Charged**] after [**Specify Number**] previous **conviction(s)** is imprisonment in the State penitentiary for a term of ~~not less/more than 5/10/20~~ [**Specify Term Provided in 21 O.S. 2001 & Supp.2004, § 51.1(A), 51.a or 51.3**] years. When you have decided on the proper punishment, you should fill in the appropriate space on the verdict form and return the verdict to the Court.

---

Statutory Authority: 21 O.S. ~~1991, § 51~~ 2001 & Supp.2004, §§ 51.1, 51.1a, 51.3.

## Notes on Use

This instruction should be used in cases where sentence enhancement is sought for prior convictions and the defendant has stipulated to the fact of the prior convictions. For a second stage instruction for cases where the defendant has not stipulated to the prior convictions, see OUJI–CR 10–21.

If there are multiple counts, the pattern for this instruction should be repeated for each count.

A Verdict Form for the second stage where the prior convictions have been stipulated to is provided OUJI–CR 10–20, *infra.*

## OUJI–CR 10–21
## RETURN OF VERDICT—
## PRIOR CONVICTIONS CONTESTED (SECOND STAGE)

By your verdict in the first part of this trial you have already found the defendant guilty of the crime of [**Crime Charged**]. You must now determine the proper punishment.

The defendant has been charged with having previously been convicted of: [**List Prior Convictions**]. The law presumes that the defendant has NOT been previously convicted as the State has charged. You may consider the previous **conviction**(s) only if the State has proved beyond a reasonable doubt:

1. The fact of the **conviction**(s); and

2. That the defendant is the same person who was previously convicted.

The punishment for [**Crime Charged**] after 2 [**or more**] previous convictions is imprisonment in the State penitentiary for a term of ~~not less than 20~~ [**Specify Term Provided in 21 O.S. Supp.2004, § 51.1(B) or (C)**] years. If you find the defendant guilty of [**Crime Charged**] after 2 [**or more**] previous convictions, you shall return a verdict of guilty by marking the verdict form appropriately, fill in the appropriate space on the verdict form and return the verdict to the court. If you have a reasonable doubt of the defendant's guilt to the charge of [**Crime Charged**] after 2 [**or more**] previous convictions, you shall then consider whether the defendant is guilty of [**Crime Charged**] after 1 previous conviction.

The punishment for [**Crime Charged**] after 1 previous conviction is imprisonment in the State penitentiary for a term of ~~not less/more than 5/10/20~~ [**Specify Term Provided in 21 O.S.2001 & Supp.2004, § 51.1(A), 51.1a, or 51.3**] years. If you find the defendant guilty of [**Crime Charged**] after 1 previous conviction, you shall return a verdict of guilty by marking the verdict form appropriately, fill in the appropriate space on the verdict form and return the verdict to the court. If you have a reasonable doubt of the defendant's guilt to the charge of [**Crime Charged**] after 1 previous conviction, you shall then determine the proper punishment for the crime of [**Crime Charged**] without regard to a previous conviction.

The crime of [**Crime Charged**] without a previous conviction is punishable by imprisonment in the State penitentiary for a term of [**State Range of Punishment**].

When you have decided on the proper punishment, you shall fill in the appropriate space on the verdict form and return the verdict to the Court.

---

Statutory Authority: 21 O.S. ~~1991, § 51~~ 2001 & Supp.2004, §§ 51.1, 51.1a, 51.3.